JUAN HERMÁN COLÓN y OTROS, demandantes y recurrentes, *v.* CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA, demandada y recurrida.

*Número:* R-84-29   *Resuelto:* 4 de junio de 1984

*Frank Rodríguez García*, abogado de los recurrentes; *Héctor Urgell Cuevas*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Nuestra Constitución "reconoce el derecho a tener ideas políticas . . . diferentes y en conflicto entre sí sin que esta diferencia o este conflicto milite en favor o en contra de ciudadano alguno en sus relaciones con el Estado". 4 Diario de Sesiones de la Convención Constituyente 2562 (1951). Para acercar a la realidad ese ideal constitucional, es hora de que los administradores, autoridades nominadoras y alcaldes, reconozcan que el Poder Judicial no tolerará discriminaciones ni despidos ilegales político-partidistas.

## I

Este recurso se origina en una demanda promovida por los Sres. Juan Hermán Colón, César Rivera Flores y Luis R. Castañeda por alegado despido ilegal, acaecido en el año

1973, de sus puestos en la Corporación de Renovación Urbana y Vivienda (C.R.U.V.).

Se impone un breve historial de la trayectoria pública de estos funcionarios, según las determinaciones de la ilustrada sala de instancia. Colón trabajaba desde 1954 con la Autoridad Municipal sobre Hogares de Ponce, la cual fue absorbida por la C.R.U.V. Para el 1969 se desempeñaba como Contador III con un sueldo de $525 mensuales. Ese año fue llamado a ocupar la plaza de Gerente de Distrito en Ponce, designándosele Ejecutivo de Administración de Vivienda. Castañeda comenzó en la C.R.U.V. el 1ro de septiembre de 1963 y para el 1969 era Contador III en Humacao. Devengaba $550 mensuales. El 1ro de agosto de 1969 se le nombró allí Funcionario Ejecutivo VI como Supervisor General de Distrito. Rivera Flores era Agrónomo IV en el servicio sin oposición en el Departamento de Agricultura. Ganaba entonces $650 mensuales. El 16 de septiembre de 1971 pasó al cargo de Gerente o Supervisor General de Distrito de Caguas para la C.R.U.V. Estas tres personas estaban públicamente identificadas y eran miembros activos del Partido Nuevo Progresista (P.N.P.). Bajo esa administración gubernamental fueron directamente nombrados por el entonces Director Ejecutivo de la C.R.U.V., Sr. Miguel Santiago Meléndez.

El Reglamento de Personal de la C.R.U.V. vigente al momento de estos nombramientos, clasificaba el puesto de Supervisores Generales de Distrito como empleados de confianza. Una enmienda introducida por la Junta de Directores el 24 de octubre de 1972 para clasificar tales puestos a "regulares o de carrera" fue subsiguientemente declarada nula.

En el año 1973 la composición de la Administración central varió. El nuevo Secretario de Vivienda designó al Sr. Ismael Ríos Sánchez Director Ejecutivo de la C.R.U.V. y como Director Asociado del Programa de Administración de Vivienda a la Sra. María L. Guerra. Durante los meses de

enero y febrero el señor Ríos Sánchez se reunió con cada uno de los demandantes. Les indicó que iba a nombrar "personas de su confianza" en los puestos de Supervisor General de Distrito. Ofreció a Colón y a Castañeda puestos regulares en la agencia iguales a los que habían ocupado previamente. Ambos los rechazaron en vista de la reducción económica que la diferencia en sueldo representaría. Rivera Flores, quien antes no ocupaba plaza en la C.R.U.V. —venía del Departamento de Agricultura— expuso su interés de retornar a la industria privada. Bajo la premisa de que tales puestos eran de confianza, fueron cesanteados. En su oportunidad alegadamente fueron sustituidos por personas identificadas con el Partido Popular Democrático (P.P.D.).

Acudieron al Tribunal Superior, Sala de San Juan, cuestionando la legalidad de esa determinación. Instancia concluyó que la naturaleza de los servicios prestados por los demandantes era de confianza por lo que procedía el despido sumario. Emitimos orden de mostrar causa para evaluar esa sentencia.

## II

No existe duda de que para la fecha en que los recurrentes fueron nombrados Gerentes de Distrito, el Reglamento de Personal de la C.R.U.V. contenía un procedimiento para el reclutamiento del personal de *carrera*. Requería ofrecer y aprobar exámenes de ingreso y ascenso para los distintos puestos y el establecimiento de un registro de elegibles. Ninguno de los demandantes recurrentes pasó por ese proceso. Sus nombramientos fueron directos. Ese trámite unido a la naturaleza de sus funciones tienden a sostener la conclusión de que eran de confianza. Ante esa situación, de ordinario, no intervendríamos con el dictamen de instancia declarando sin lugar la demanda.

Ahora bien, de poco valor jurídico y persuasivo resulta la razón aducida por el Director Ejecutivo señor Ríos Sánchez para sustituirlos, esto es, reclutar personas en

quienes pudiera confiar enteramente la ejecución de sus órdenes o instrucciones. Los recurrentes adujeron que ello realmente respondió a razones de discrimen político. La prueba y las circunstancias aquí presentes nos inclinan a darles la razón. Se estipuló que la "capacidad administrativa de los demandantes nunca estuvo en controversia, ni fue determinante en la decisión". (¹) La alegación de que fueron sustituidos por ser afiliados de un partido distinto crea una fuerte inferencia de que fue ese el verdadero móvil. En estas circunstancias, mediante preponderancia de prueba, se justifica concluir que hubo discrimen político. *Navedo* v. *Municipio de Barceloneta*, 113 D.P.R. 421 (1982); *Báez Cancel* v. *Alcalde Mun. de Guaynabo*, 100 D.P.R. 982 (1972). Ellos eran acreedores a que su causa de acción fuera evaluada bajo la doctrina expuesta en *Ramos* v. *Srio. de Comercio*, 112 D.P.R. 514 (1982). A tal efecto, aunque sus funciones eran de confianza, notamos que la autoridad nominadora no ha podido demostrar que la afiliación político-partidista fuera un requisito apropiado para el desempeño del cargo público envuelto. No nos extraña. Difícilmente podemos visualizar que el descargo fiel y eficiente de los deberes del puesto de Gerente o Supervisor General de Distrito, según estaban enumerados en la OP-16 de la Oficina de Personal, (²) en el

---

(¹) La ausencia de la capacidad administrativa necesaria para un puesto, o el descuido, ineficiencia o indisciplina en el descargo de tales funciones serían motivos para prescindirse válidamente de un funcionario de confianza.

(²) Disponía:

"1. Planifica, organiza, asigna y supervisa todas las actividades operacionales y administrativas del distrito tales como: servicios sociales y Labor Comunal que se ofrecen a residentes, selección y ocupación de viviendas, contabilidad y mantenimiento de los proyectos de distrito.

"2. Revisa y firma todos los informes que se someten a la Oficina Central del Programa de Viviendas, relacionados con las distintas fases de trabajo del distrito.

"3. Vela porque se cumpla y se implemente todas las normas y reglamentos de conformidad con la filosofía del Programa de viviendas.

"4. Informa y orienta al personal del distrito cualquier cambio en normas y reglamentos.

"5. Revisa y aprueba los informes de cambios en rentas, los informes que se envían a la agencia federal, otras agencias del gobierno y a la oficina central;

programa de viviendas públicas exija determinada lealtad a los postulados ideológicos de un partido político. De un lado, para implementar la filosofía de ese programa social, y del otro, para ser un ciudadano acreedor a sus beneficios, no es menester tal preferencia como criterio válido. El único prisma limpio para mirar toda solicitud ha de ser la necesidad de la vivienda y demás factores meritorios del caso. La afiliación partidista es ajena al proceso de elegibilidad. Aplicable es el siguiente pronunciamiento:

> [E]s razonable concluir que recae sobre la autoridad nominadora (el gobierno) desfilar prueba demostrativa de que la afiliación política particular del empleado es "requisito apropiado" para el desempeño efectivo del cargo en cuestión, o sea, le corresponde establecer la existencia de intereses gubernamen-

informes de contabilidad, órdenes de compras, desembolsos, requisiciones de compras, presupuesto preliminar de obra de mantenimiento ordinario y extraordinario y el presupuesto funcional del distrito y cualquier otro informe relacionado con las distintas fases operacionales del distrito.

"6. Asiste en representación de la CRUV a reuniones con otros funcionarios gubernamentales o líderes cívicos de la comunidad con el propósito de discutir y coordinar la implementación de servicios sociales, económicos, de salud, etc. que se le brindan a los residentes de vivienda pública.

"7. Redacta informes, en inglés o en español, para ser sometidos a la Oficina Central del Programa, Director Ejecutivo, otras agencias del gobierno, oficina del Gobernador, etc.

"8. Redacta correspondencia en español o en inglés, para su firma, para la firma del Director Asociado del Programa o para la firma del Director Ejecutivo.

"9. Hace recomendaciones sobre reclutamiento de personal, cesantías, ascensos de sueldo y otras relacionadas con los empleados del Distrito.

"10. Recibe y atiende a residentes o al público en general en casos que presenten problemas difíciles que no han podido ser resueltos en niveles inferiores.

"11. Realiza funciones periódicas con su personal supervisorio para ofrecer orientación sobre cambios en normas y reglamentos, informar nuevas guías de trabajo, evaluación de trabajo realizado, establecer prioridades de trabajo y para otros fines.

"12. Hace visitas periódicas a los proyectos de viviendas del distrito para velar que su funcionamiento operacional sea adecuado.

"13. Asiste a reuniones periódicas con el Director Asociado del Programa de Viviendas para discutir problemas complejos relacionados con la operación del Distrito.

"14. Atiende llamadas telefónicas para recibir u ofrecer información relacionada con las operaciones del distrito.

"15. Realiza cualquier otra encomienda especial que le sea asignada."

tales que son de importancia y jerarquía superior a los derechos del empleado bajo la Primera Enmienda. En este aspecto, en el caso de autos, fracasó el Estado. *Ramos* v. *Srio. de Comercio*, supra, pág. 516.

De otra parte, el clima altamente politizado que, desafortunadamente, prevalece en nuestro país y permea las funciones de gobierno no permite descartar que en determinado caso un empleado desafecto al partido político en el poder pueda por ello ser desleal a las exigencias de sus funciones como servidor público. Si ello se planteare, la determinación de la validez de su despido o censantía deberá hacerse teniendo en cuenta, entre otras circunstancias, y aparte del hecho de tratarse de un empleado de confianza, la oportunidad que haya tenido bajo el nuevo gobierno de demostrar durante un término razonable que su competencia, eficiencia y su lealtad a los postulados del servicio no se han afectado y están por encima de sus preferencias políticas personales.

## III

Es indispensable que los tribunales rompan la tendencia y círculo vicioso establecido en el país, después de cada elección general, de sustituir personal gubernamental por motivos ajenos a una buena administración pública: patronazgo, despojo y desquite político-partidista. *Olivieri Morales* v. *Pierluisi*, 113 D.P.R. 790 (1983). El drama se repite cada vez que ocurre un cambio de gobierno representativo de otra afiliación política. Las consecuencias detrimentales son funestas y resultan alarmantes. La erosión de fondos sustancial. Es materia de conocimiento judicial la crisis financiera y el impacto negativo que sobre el presupuesto representa satisfacer este tipo de sentencias. Constituye un desvío sustancial de fondos públicos en menoscabo de los servicios esenciales a la ciudadanía, independiente de

su afiliación partidista. Los tribunales deben realizar todo esfuerzo por diseñar remedios disuasivos. [3]

Por los fundamentos expuestos, *se dicta sentencia que revoca la del Tribunal Superior, Sala de San Juan, fechada 19 de octubre de 1983, y se decretan nulos los despidos. Al disponer dicho foro la compensación por sueldos dejados de recibir deberá hacer las deducciones correspondientes por salarios, contribuciones, seguro social, retiro y otros. Véanse, Estrella v. Mun. de Luquillo 113 D.P.R. 617 (1982); Municipio de Mayagüez v. Rivera, 113 D.P.R. 467 (1982). También deducirá aquellas otras cantidades que en la circunstancias particulares de este caso procedan.*

*Continuarán ante el foro de instancia los trámites compatibles con lo aquí dispuesto.*

El Juez Asociado Señor Irizarry Yunqué no intervino.

---

[3] La situación es crítica y reclama creatividad judicial remedial urgente. En este caso el tribunal de instancia declaró sin lugar la demanda. Únicamente se reclamó contra la CRUV y los funcionarios, en sus capacidades oficiales y no de manera personal. Por tal razón dicho foro no formuló determinaciones sobre si ellos procedieron o no de mala fe y con grave menosprecio a los derechos constitucionales y civiles ni dispuso otros remedios, cuestión sobre la cual no tenemos que pronunciarnos en esta ocasión.