# 97 DTA 131

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

PAULINO DELGADO NEGRON; ELIFAZ PANTOJAS CANCEL
Querellados-Recurrentes

v.

GOBERNADOR DE PUERTO RICO,
DEPARTAMENTO DE ESTADO DE PUERTO RICO
Querellantes-Recurridos

Núm. KLAA-96-00135

San Juan, Puerto Rico, a 8 de abril de 1997

Panel integrado por su Presidenta, Juez Rivera de Martínez,
y los Jueces Cabán Castro y Rivera Pérez

Cabán Castro, Juez Ponente

RECEIVED
OCT 2 0 1997
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

## TEXTO COMPLETO DE LA RESOLUCION

Se nos solicita revoquemos una decisión del Gobernador de Puerto Rico, mediante la cual éste destituyó a un miembro de la Junta Examinadora de Peritos Electricistas (en adelante, la Junta) y suspendió a otro hasta el final de su término. El trasfondo fáctico del caso es el siguiente.

### I

El 6 de abril de 1994, el Gobernador de Puerto Rico, Hon. Pedro Rosselló, informó mediante carta a los recurrentes que el Departamento de Estado había recibido una querella de parte del señor Gerardo Olivella, miembro de la Junta. En dicha querella se imputaban ciertas actuaciones impropias a los recurrentes, Paulino Delgado Negrón y a Elifaz Pantojas Cancel, Presidente y miembro de la Junta, respectivamente. En la misma carta, el Gobernador les informó que se había practicado una investigación que arrojó base suficiente para suspender a ambos recurrentes de sus funciones en la Junta. Continuó informándoles su intención de destituirlos, por lo cual procedió a notificarles los cargos formulados. Al señor Paulino Delgado Negrón le formuló el siguiente cargo:

*"Haber alterado las tarjetas de evaluación de varios aspirantes en el examen práctico de dicha Junta de los días 4 y 11 de diciembre de 1993."*

Al señor Elifaz Pantojas Cancel se le formularon los siguientes cargos:

*"1. Haber enseñado copia del examen teórico el 3 de diciembre de 1993, a algunos aspirantes que tomaban dicho examen.*

*2. Acercarse a algunos aspirantes durante el examen e indicarles verbalmente, así como señalar, las contestaciones correctas al mismo."*

A ambos se les notificó, que de no estar de acuerdo con la decisión, podían solicitar una vista administrativa, lo que los recurrentes hicieron el 25 de abril de 1994. Las vistas administrativas se celebraron durante los días 10, 11, 12, 20 y 25 de enero de 1995, en las cuales los recurrentes comparecieron debidamente representados.

El 13 de febrero de 1995 el Oficial Examinador rindió su informe, mediante el cual recomendó al Gobernador destituir de su cargo al señor Pantojas Cancel y suspender hasta el final de su término al señor Delgado Negrón. El 6 de marzo de 1995, el Gobernador notificó a los recurrentes que el informe del Oficial Examinador contenía evidencia suficiente para sostener los cargos formulados. En consecuencia les notificó la destitución y suspensión, respectivamente, tal como lo recomendara el Oficial Examinador. Esta carta no incluyó advertencia alguna sobre el derecho a reconsiderar ni a solicitar revisión judicial, ni los términos para ello.

El 21 de marzo de 1995, los recurrentes presentaron una Moción de Reconsideración ante el Departamento de Estado y el Gobernador de Puerto Rico en la que señalaron múltiples errores. Aunque no invocaron expresamente la Ley de Procedimiento Administrativo Uniforme la mayoría de los señalamientos se refieren a los derechos reconocidos por dicha ley.

El 24 de abril de 1995, el Subsecretario de Estado comunicó a los recurrentes que daba por no presentada la Moción de Reconsideración, ya que la Ley de Procedimiento Administrativo Uniforme no era aplicable al caso, y se reafirmó en que fueron destituidos siguiendo el procedimiento correcto establecido en la Ley Núm. 115 de 2 de junio de 1976, 20 L.P.R.A. 2701 *et seq.*, que creó la Junta Examinadora de Peritos Electricistas. La carta del Subsecretario no contiene advertencia alguna sobre el derecho a solicitar revisión judicial ni el término para hacerlo.

### II

Los recurrentes acuden ante nos en solicitud de revisión judicial con los siguientes señalamientos

de error:

*"A. Se violó el debido proceso de ley al no notificarse adecuadamente la resolución del Gobernador en cada uno de los casos. Ni apercibir a los recurrentes de su derecho a pedir reconsideración y de acudir al Tribunal en Revisión de dicha decisión.*

*B. Se violó el debido proceso de ley en la designación y mantenimiento de un Oficial Examinador comprometido con la querellante, que demostró durante la vista premura y ánimo prevenido en contra de los querellados.*

*C. Se violó él debido proceso de ley al admitirse evidencia traída sorpresivamente y otra ofrecida luego de haberse sometido el asunto para decisión.*

*D. Se violó el debido procedimiento de ley al admitirse evidencia perjudicial en forma de declaración jurada de una persona cuya ausencia no fue justificada y que no fue notificada como testigo.*

*E. El Oficial Examinador aceptó como buenas, violaciones a la reglamentación de la Junta Examinadora de Peritos Electricistas, así como tomó en cuenta evidencia completamente impugnada no merecedora de credibilidad y rechazó evidencia no impugnada merecedora de credibilidad.*

*F. Las "Propuestas determinaciones de hecho" del Oficial Examinador no están apoyadas por la totalidad de la prueba en el expediente administrativo, careciendo de base en la evidencia sus recomendaciones, por lo que erró el Gobernador en adoptarlas."*

### III

Los primeros cuatro errores tienen en común alegadas violaciones al debido proceso de ley. Aunque no lo señalan expresamente, los errores apuntan a violaciones a las garantías procesales y sustantivas de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. Secs. 2101 *et seq.* Los recurrentes, invocando la aplicación de dicha ley, solicitan en la súplica de su escrito que *"se acepte este recurso como debidamente radicado en tiempo razonable",* ■ que se expida el auto y se ordene la revocación de la decisión del Gobernador.

El asunto requiere que en primer lugar establezcamos cuál debe ser la ley aplicable a la controversia y, en consecuencia, cuál es el término que tenían los recurrentes para acudir al tribunal.

La Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.*, conocida como Ley de Procedimiento Administrativo Uniforme, dispone en la sección 1.3:

*"A los efectos de este Capítulo los siguientes términos o frases tendrán el significado que a continuación se expresa:*

*(a) "Agencia" significa cualquier junta, cuerpo, tribunal examinador, corporación pública, comisión, oficina independiente, división, administración, negociado, departamento, autoridad, funcionario, persona, entidad o cualquier instrumentalidad del Estado Libre Asociado de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo funciones de reglamentar, investigar, o que pueda emitir una decisión, o con facultades para expedir licencias, certificados, permisos, concesiones, acreditaciones, privilegios, franquicias, acusar o adjudicar, **excepto:***

*(1).....*

*(2)......*

*(3) La Oficina Propia del Gobernador*

*(4).....* " (Enfasis suplido).

Surge de la sección transcrita que la oficina propia del Gobernador está **expresamente** excluida de la aplicación de la ley 170, *supra*. Ello significa que una persona afectada por una decisión de dicha oficina no puede ampararse en la Ley 170 para atacar la decisión de que se trate. Por lo tanto, los recurrentes, afectados por una decisión del Gobernador realizada bajo las facultades que a éste concede la Ley Núm. 115 de 2 de junio de 1976, 20 L.P.R.A. 2701 *et seq.*, no tienen derecho a que dicha acción sea revisada al amparo de la Ley de Procedimiento Administrativo Uniforme.

## IV

Esto no quiere decir, sin embargo, que los recurrentes estén desamparados y que la decisión del Gobernador no pueda ser revisada mediante otros mecanismos de ley. Antes de explicar porqué y bajo qué disposiciones podemos revisar la decisión del Primer Ejecutivo es necesario examinar la ley bajo la cual el Gobernador actuó en este caso.

La Ley Núm. 115 de 2 de junio de 1976, según enmendada, 20 L.P.R.A 2701 *et seq.*, que creó la Junta Examinadora de Peritos Electricistas, dispone:

*"La Junta estará compuesta por nueve (9) peritos electricistas, debidamente autorizados por ley para ejercer la profesión, los cuales deberán ser miembros del Colegio de Peritos Electricistas de Puerto Rico. El Gobernador de Puerto Rico nombrará, con el consejo y consentimiento del Senado, a dichos miembros. El término de miembro de la Junta será de cuatro (4) años o hasta que su sucesor sea nombrado y tome posesión de su cargo. "* 3 L.P.R.A. sec. 2703.

En cuanto a los mecanismos de remoción la misma ley dispone:

*"El Gobernador de Puerto Rico podrá destituir a cualquier miembro de la Junta previa formulación de cargos, notificación y audiencia, **por razones de inmoralidad, negligencia, haber sido convicto de un delito grave o menos grave que implique depravación moral, e incompetencia."*** (Enfasis suplido). 20 L.P.R.A. sec. 2704.

No obstante esbozar el procedimiento y las causas de destitución de los miembros de la Junta, la Ley 115, *supra*, no establece un mecanismo de revisión judicial de la acción del Gobernador. Parecería a primera vista que ello se debe a que los miembros de la Junta son personal de confianza bajo la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 L.P.R.A. 1301 *et seq.*, conocida como Ley de Personal del Servicio Público de Puerto Rico. En efecto dicha ley dispone:

*"Los empleados de confianza son aquellos que intervienen o colaboran sustancialmente en la formulación de la política pública, que asesoran directamente o que prestan servicios directos al jefe de la agencia, tales como:*

..........

*"(6) Los miembros de juntas o comisiones permanentes nombrados por el Gobernador y sus respectivos secretarios personales.*

*Los empleados de confianza serán de libre selección y remoción. Serán igualmente de confianza aquellos que aunque siendo de libre selección sólo pueden ser removidos por justa causa por disposición de ley o aquellos cuyo nombramiento sea por un término prefijado por ley."* 3 L.P.R.A. sec. 1350

Reiteradamente se ha reconocido, tanto bajo la Ley de Personal actual como bajo la anterior, el poder de la autoridad nominadora para destituir a un empleado de confianza sin necesidad de formulación de cargos ni de celebración de una vista administrativa. *Pastor Lozada v. Director Ejecutivo*, 101 D.P.R. 923 (1974); *Díaz González v. Tribunal Superior*, 102 D.P.R. 195 (1974); *Ramos v. Srio. de Comercio*, 112 D.P.R. 514 (1982); *Morales Narváez v. Gobernador*, 112 D.P.R. 761 (1982); *Clemente v. Depto. de la Vivienda*, 114 D.P.R. 763 (1983); *Colón v. C.R.U.V.*, 115 D.P.R. 503 (1984); *Feliciano v. Mun. de Fajardo*, 115 D.P.R. 675 (1984); *McCrillis v. Aut. Navieras de Puerto Rico*, 123 D.P.R. 113 (1989). Sin embargo, las disposiciones de las leyes de personal no pueden infringir los derechos que confiere la Primera Enmienda de no ser despedido de un cargo por razones

políticas, *Hiraldo-Cancel v. Aponte,* 925 F.2d 10 (1991), pues la condición de empleado de confianza de por sí no priva de la protección contra el discrimen político, *McCrillis v. Aut. Navieras, supra,* pág. 137. Ahora bien, cuando el propio legislador ha establecido unas causales para la destitución de un cargo de confianza, no se trata de un puesto de libre remoción. En tal caso, como requisito indispensable del debido procedimiento de ley, es necesario formular y notificar cargos, ofrecer derecho a confrontar la prueba de cargo, a presentar evidencia, etc. y probar los cargos imputados como condición previa a la remoción del empleado.

De las disposiciones transcritas resulta que la Junta Examinadora de Peritos Electricistas es una junta permanente cuyos miembros son nombrados por el Gobernador. Ello los cualifica como personal de confianza. Sin embargo, no son de libre remoción, pues sólo pueden ser removidos por las razones expuestas en la ley, previa formulación, notificación y audiencia, o cuando expiren sus términos.

La Ley 115, *supra,* le da al Gobernador facultad de destituir a los miembros de la Junta, pero no establece procedimiento alguno para la revisión de dicha destitución. Al así hacerlo, parecería que el debido procedimiento que tanto la Constitución de Estados Unidos como la de Puerto Rico conceden a **toda persona** se ha quedado trunco. Las referidas constituciones ofrecen un debido procedimiento de ley. No existe tal cosa como *"medio"* debido procedimiento de ley, por lo tanto, no puede haber duda que los recurrentes tienen derecho a la revisión judicial por imperativo constitucional. Tal revisión puede darse en las dos vertientes conocidas del debido proceso de ley: la procesal y la sustantiva. La procesal requerirá que examinemos si se dio cumplimiento a los requisitos básicos de la Ley 115, *supra,* a saber, formulación de cargos, notificación, audiencia, previo a la destitución. En cuanto a la audiencia es revisable el procedimiento seguido, es decir, si se ofrecieron las garantías mínimas de presentar evidencia, confrontar la prueba, la evaluación imparcial de la misma y otros.

En la vertiente sustantiva requerirá examinar si la prueba aportada es suficiente para hallar probados los cargos formulados. La destitución está sujeta a que se pruebe la comisión de al menos una de las causas establecidas en la ley. Mas la determinación ejecutiva acerca de si el cargo imputado se probó o no, es revisable por los tribunales. Lo contrario implicaría que existe una zona de acción ministerial del Ejecutivo que no está sujeta a revisión judicial. Cf. *Marburry v. Madison,* 1 Cranch 137, 2 L. Ed. 60 (1803). La separación de poderes, columna central de nuestro ordenamiento jurídico, no toleraría ese resultado.

La revisión judicial de las acciones del Ejecutivo son de largo abolengo en el derecho norteamericano. Para una exposición detallada de la legitimidad de la revisión judicial en Estados Unidos, véase Serrano Geyls, Raúl, *Derecho Constitucional de Estados Unidos y Puerto Rico,* Programa de Educación Legal Continuada, Universidad Interamericana de Puerto Rico, Fac. Derecho, 1992, Vol. I, págs. 36-55. En numerosas ocasiones el Tribunal Supremo federal ha revisado decisiones del Presidente en casos de destitución de funcionarios ejecutivos de confianza que podían ser removidos de su posición por justa causa. *Myers v. United States,* 272 U.S. 52 (1926); *Humphrey's Executor v. United States,* 295 U.S. 602 (1935); *Weiner v. United States,* 357 U.S. 349 (1958); *Morrison v. Olson,* 487 U.S. 654 (1988). La jurisprudencia puertorriqueña también registra casos de revisión judicial de destituciones de funcionarios de confianza hechas por el Ejecutivo. *Jiménez v. Reily,* 30 D.P.R. 626 (1922); *Romero Moreno v. Gore,* 46 D.P.R. 408 (1934); *Abella Blanco v. Tugwell,* 66 D.P.R. 690 (1946).

Se ha resuelto que cuando una ley establece justa causa para la destitución de un puesto de confianza, se ha querido que dicho cargo sea *"independiente de la autoridad ejecutiva".* *Humphrey's Executor v. United Sates, supra.* El caso de autos plantea justamente la cuestión de un organismo con funciones para licenciar y adjudicar controversias que, aunque es parte de la Rama Ejecutiva, el legislador lo diseñó con las características propias de un organismo independiente. Esa independencia se vería menoscabada si la determinación última en la destitución de un miembro de la Junta quedara en las manos de quien lo nombró.

Por las razones anteriormente expuestas, acogemos la solicitud de los recurrentes como un recurso ordinario y pasamos a evaluar el término que tenían para presentar su acción.

V

A los querellados-recurrentes se le formularon y notificaron los cargos, se le dio derecho a vistas, a presentar evidencia y a contrainterrogar testigos. Como resultado de todo ese proceso el Oficial Examinador que presidió el procedimiento emitió un informe cuyas recomendaciones fueron acogidas por el Gobernador. Este notificó su decisión a los recurrentes, sin advertirles su derecho a solicitar reconsideración de la misma ni a acudir en revisión judicial. A pesar de ello, los recurrentes solicitaron oportunamente reconsideración, pero se les informó que su solicitud se dio por no recibida, por considerarse correctamente que la Ley de Procedimiento Administrativo Uniforme no era aplicable al caso. De esa decisión acuden los recurrentes ante nos.

Como ya hemos señalado, la Ley 115, *supra*, no provee para la revisión judicial, por lo que no existe un término para radicar una acción contra la decisión del Gobernador. En tal caso se ha resuelto que debe aplicarse la doctrina de incuria. *Rivera Rivera v. Depto. de Servicios Sociales,* 132 D.P.R. ___ (1992), Opinión de 15 de diciembre de 1992, **92 J.T.S. 169.** Al aplicarse la doctrina de incuria lo decisivo no es el mero transcurso del tiempo, sino el efecto de otras circunstancias, aparte de la demora, tales como la justificación de la tardanza incurrida, el perjuicio que ella acarrea y el efecto sobre intereses públicos y privados. Debe pesar mucho si el reclamante se cruzó de brazos. *Rivera Rivera v. Depto. de Servicios Sociales, supra.*

En este caso los recurrentes no se cruzaron de brazos, pues solicitaron reconsideración. Su demora se debió a que estuvieron esperando una respuesta a la reconsideración; cuando se les informó que ésta se daba por no recibida acudieron al tribunal. No podemos concluir que el tiempo transcurrido desde la negativa de reconsideración hasta la presentación del recurso, 33 días después, constituyó incuria. [2] En consecuencia, no hay escollos jurisdiccionales para considerar el caso. Debemos, pues, examinar los alegados errores que presentan los recurrentes.

## VI
Como señaláramos antes, los primeros cuatro errores se refieren a alegadas violaciones al debido procedimiento de ley. En el primero se alega dicha violación por la ausencia de notificación del derecho a pedir reconsideración y acudir en revisión al Tribunal. Sobre el particular refiérase a la primera parte de esta sentencia, página 4, en que se explica porqué la Ley 170, *supra*, es inaplicable al caso. No cometió el error.

El segundo error apunta a la falta de imparcialidad del Oficial Examinador. Se señala que éste estaba siendo considerado por el Gobernador para nombramiento como juez del Tribunal de Circuito de Apelaciones. Ese hecho por sí sólo no es suficiente para establecer prejuicio por parte del Oficial Examinador. Los recurrentes no presentan prueba alguna demostrativa de que esta circunstancia haya intervenido en la consideración del caso.

Su otro argumento es que el Oficial Examinador mostró un ánimo prevenido en contra de los recurrentes al hacer preguntas a los testigos o con ciertos comentarios durante la vista. Para ilustrar esto hacen referencia a extensos pasajes de la transcripción de las vistas. Hemos leído cuidadosamente todas las referencias citadas y no encontramos que sean correctas las alegaciones de prejuicios contra los recurrentes. Algunas de las referencias dadas por los recurrentes ni siquiera aparecen en la transcripción. El Oficial Examinador hizo muchas preguntas, pero fueron mayormente aclaratorias o para cubrir aspectos no tocados por las partes. No encontramos que sus preguntas fueran sugestivas. Llama la atención que durante la vista la representación legal de los recurrentes no objetara las preguntas del Oficial Examinador ni el hecho de que éste interviniera frecuentemente. También es elocuente el hecho de que al finalizar las vistas el abogado de los recurrentes hiciera las siguientes expresiones dirigidas al Oficial Examinador:

*"Lo único que quiero decirle que dentro de nuestra situación como abogado de la parte querellada aquí, le queremos dar las más expresivas gracias por como se han conducido estas vistas. Y también felicitarlo abiertamente, delante de todo el mundo por la posición que va a ocupar posiblemente."*

La queja sobre ánimo prevenido se plantea por primera vez en revisión judicial. No se cometió el error señalado.

El Tercer error se refiere a evidencia presentada por la recurrida después de concluidas las vistas.

Específicamente se refiere a varias minutas de reuniones de la Junta Examinadora de Peritos Electricistas que la representación del Departamento de Estado envió al Oficial Examinador una semana después de terminar las vistas.

Durante las vistas se discutió extensamente acerca de un alegado acuerdo o costumbre de la Junta de concederle un punto a aquellos aspirantes que les faltaba un sólo tanto para obtener *"aprobado"*. El señor Víctor Santiago Cintrón dijo estar seguro que en su casa tenía copia de una minuta de reunión donde se aprobó esa práctica y el Oficial Examinador le solicitó que la buscara y se la hiciera llegar. La testigo María Milagros Sevilla, Asesora de Reorganización de la División de Juntas Examinadoras, señaló que en el pasado hubo un acuerdo de conceder un punto a los que le faltaba para aprobar, pero no pudo decir si se trató de un acuerdo formal que constara en las actas de la Junta. Llamada a testificar la Secretaria de la Junta, Marta Cátala, señaló que no recordaba que tal acuerdo se hubiera tomado en una reunión. Otros testigos señalaron que se había hecho durante un tiempo y luego se había descontinuado, pero no fue posible determinar si se trató de un acuerdo oficial. Sin embargo, la contención de los recurrentes era que se trataba de un acuerdo de la Junta que no había sido dejado sin efecto. Varias veces señaló el Examinador la necesidad de establecer mediante documento oficial si el asunto se había aprobado o no. Al final del último día de vistas el propio Oficial Examinador solicitó que se buscara en los archivos del Departamento de Estado copia de la minuta en que supuestamente se aprobó conceder un punto a los fracasados. En el breve intercambio final el Oficial Examinador hizo las siguientes expresiones refiriéndose al documento solicitado:

*"Para yo poder saber la verdad necesitaría que se hiciera un esfuerzo.*

.....

*Hay que tratar de conseguir esa acta, si es que existe. Si no existe, pues lo informa también.*

.....

*Lo que estamos buscando es la posición del punto, pero estamos buscando si hay algo que lo recoja, un acta que lo recoja.*

.....

*Pero vamos a hacer una cosa, para estar más tranquilo. Que se haga un intento de buscar allí, si no lo hay, Marta Cátala o alguien que diga que en ese momento lo han buscado pero no existe.*

.....

*Entonces si lo hay, le notifica al compañero y me notifica a mí por supuesto. ¿Hay algo más?"*

La gestión de búsqueda se hizo, aparecieron las actas y fueron notificadas al Oficial Examinador y al abogado de los recurrentes.

De las mismas no surge la existencia de un acuerdo de la Junta para regalarle un punto a los aspirantes que lo necesitaban para obtener aprobado. En realidad, la gestión beneficiaba a los recurrentes, puesto que eran ellos quienes insistían en la existencia de un acuerdo formal sobre la cuestión. El abogado de los recurrentes estaba presente y consintió cuando se acordó que la evidencia se presentara después de la vista. Por tanto, la alegada violación al debido procedimiento carece de fundamento y es un planteamiento totalmente inmeritorio.

El cuarto error señalado es también inmeritorio. Se quejan los recurrentes de que se aceptara la declaración jurada de una persona que no estuvo presente en la vista y no podía ser, por tanto, contrainterrogada. La realidad es que desde el principio de la vista las partes estipularon, como parte de la prueba, el expediente sobre formulación de cargos del Departamento de Estado. Surge de la transcripción de evidencia, que al inicio de la vista del 12 de enero de 1995, el Oficial Examinador hizo la siguiente introducción:

*"Para efectos de récord, en la mañana de hoy, el Lcdo. Clausell y la Lcda. Nigguemann, celebramos a manera de una Conferencia con Antelación al Juicio, a ver si podíamos estipular y minimizar las controversias. No fue mucho lo que logramos, pero sin embargo la prueba documental* **sí ha sido admitida toda por estipulación en evidencia,** *que consta de los dos expedientes del Departamento de Estado que contienen los documentos que el compañero Clausell interesa y los que la compañera Nigguemann también interesa."* (Enfasis suplido).

Incluso los recurrentes aceptan que durante la vista administrativa utilizaron la declaración jurada

para impugnar a un testigo. El alegado error no se cometió.

El error quinto se refiere a violaciones al Reglamento de la Junta y a la credibilidad de la evidencia y el sexto a que las determinaciones de hechos no están sustentadas por la prueba.

En cuanto a las alegadas violaciones reglamentarias sólo nos ofrecen una cita del Reglamento de la Junta que requiere de sus miembros ser completamente imparcial en la redacción y calificación de los exámenes y en todos los asuntos que sean sometidos a su consideración. Señalan que se permitió al señor Olivella realizar una *"auditoría ilegal"* que tuvo como consecuencia el fracaso de un grupo de aspirantes que no eran objeto de investigación. Sin embargo, no nos indican en qué consistió la imparcialidad ni porqué la *"auditoría"* fue ilegal.

En ausencia de prueba no podemos adjudicar una alegación desnuda.

En cuanto a la credibilidad de la prueba es principio reiterado que los tribunales revisores deben tener deferencia por las determinaciones de hechos que hace una agencia o tribunal de instancia. *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692 (1975) y casos allí citados. Además, en ausencia de error manifiesto, pasión, prejuicio o parcialidad no hemos de intervenir con la apreciación de la prueba. *Orta v. Padilla,* 137 D.P.R. ___ (1995), Opinión de 8 de febrero de 1995, **95 J.T.S. 21,** y casos allí citados.

El examen que hemos realizado de la transcripción de las vistas administrativas satisface nuestra conciencia judicial cuando comparamos su contenido con las determinaciones y recomendaciones del Oficial Examinador. En la extensa transcripción hay evidencia más que suficiente para justificar plenamente la acción propuesta y finalmente tomada.

## VII
Por los fundamentos expuestos, se deniega la solicitud de revisión presentada por los recurrentes.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 131

1. La carta del Gobernador tiene fecha de 6 de marzo de 1995. La solicitud de reconsideración se presentó el 21 de marzo de 1995. La carta del Subsecretario de Estado, rechazando la reconsideración, es de 24 de abril de 1995. Los recurrentes presentaron su solicitud de revisión el 5 de junio de 1995.

2. En ausencia de notificación sobre la fecha de archivo que permita computar el término para acudir al tribunal, usamos la fecha en que la carta del Subsecretario de Estado fue depositada en el correo, esto es, el 2 de mayo de 1995. El recurso de revisión fue radicado el 5 de junio de 1995.