En el Tribunal Supremo de Puerto Rico

| JUAN LUIS SEGARRA FELICIANO<br>      Demandante-Peticionaria<br><br>      .V<br><br>MUNICIPIO DE PEÑUELAS Y OTROS<br><br>      Demandado-Recurrido | Certiorari<br><br>98TSPR75 |

Número del Caso: CC-97-0103

Abogados Parte Peticionaria: LCDO. GUILLERMO MOJICA MALDONADO

Abogados Parte Recurrida: LCDO. GAMALIER PAGAN MARIN


Tribunal de Instancia: Superior, Sala de Ponce

Juez del Tribunal de Primera Instancia: HON. LEIDA GONZALEZ DEGRO

Tribunal de Circuito de Apelaciones: CIRCUITO REGIONAL V

Juez Ponente: Hon. FeLICIANO DE BONILLA

Fecha: 6/16/1998

Materia: Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Luis Segarra Feliciano

Demandantes-Peticionarios

v.                                    CC-97-103

Municipio de Peñuelas, et al.

Demandados-Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor CORRADA DEL RIO, a la cual se unen el Juez Presidente señor Andréu García, la Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Hernández Denton.

San Juan, Puerto Rico, a 16 de junio de 1998.

Nuevamente nos toca revisar un caso presentado por un ex Director de la Defensa Civil Municipal en el cual se alega despido por consideraciones políticas en contravención a la Primera Enmienda de la Constitución Federal, así como a lo dispuesto por el Art. II de la Carta de Derechos de la Constitución de Puerto Rico. A la luz del estado de derecho vigente a la fecha de los hechos relevantes de este caso, resolvemos que éste no tenía derecho a permanecer en su posición.

El peticionario, Juan Luis Segarra Feliciano, militante activo del Partido Popular Democrático (PPD)[1], ocupó la posición de Director de la Defensa Civil del municipio de Peñuelas desde junio de 1985 hasta marzo de 1993. Había sido nombrado a dicha posición por el alcalde electo del PPD en los comicios de 1984 y, luego de las elecciones de 1988, fue nombrado otra vez por un nuevo alcalde del mismo partido político. Este segundo nombramiento —efectivo el 9 de enero de 1989— se produjo a pesar de que, el 28 de diciembre de 1988, el peticionario le había cursado al nuevo primer ejecutivo municipal una carta mediante la cual ponía a la disposición de éste la plaza que había venido ocupando los pasados años. De acuerdo a su propio testimonio, el peticionario hizo esto debido a que sabía que la posición era de la confianza del nuevo alcalde y era éste el que debía decidir acerca de su permanencia en el puesto. (Véase Sentencia del Tribunal de Circuito de Apelaciones, pág. 2.)

En las elecciones generales celebradas el 3 de noviembre de 1992, resultó electo el candidato a alcalde por el Partido Nuevo Progresista (PNP). Este entró en funciones el 11 de enero de 1993 y le comunicó al peticionario que debían reunirse porque iba a ser reubicado en otra posición dentro del municipio. Sin embargo, antes de que se produjera dicha reunión, a finales del mismo mes de enero el peticionario tomó vacaciones, durante las cuales fue

---

[1]Veáse *infra*, nota al calce núm. 3

notificado que había sido separado de su puesto. La carta firmada por el alcalde, con fecha de 1 de marzo de 1993, le informaba al peticionario que se prescindía de sus servicios a partir del 30 de marzo de 1993 debido a que su puesto tenía una clasificación de confianza y por lo tanto era de libre selección y remoción.

Como consecuencia de esta acción, el 26 de abril de 1993, el peticionario presentó una demanda de despido por razones políticas en la cual reclamaba la reposición en el puesto de Director de la Defensa Civil municipal, paga retroactiva y compensación por los daños y perjuicios sufridos como consecuencia del mismo. El Tribunal de Primera Instancia desestimó la demanda concluyendo que conforme al estado de derecho vigente, la naturaleza de las responsabilidades del cargo que ocupaba el demandante exigía la afinidad política entre el Director Municipal de la Defensa Civil y el alcalde, por lo que son válidas las consideraciones políticas en el nombramiento de una persona a dicho puesto. Inconforme, el peticionario apeló al Tribunal de Circuito de Apelaciones el cual confirmó el dictamen de instancia.

En su recurso, presentado oportunamente ante este Tribunal, el peticionario señaló lo siguiente como único error cometido por el foro *a quo*:

> "Erró el Honorable Tribunal de Circuito de Apelaciones al negarse a revisar la Sentencia dictada por el Honorable Tribunal de Primera Instancia, Sala Superior de Ponce, González Degró, Juez, bajo el fundamento de que el foro apelativo sólo intervendrá con las determinaciones de los Tribunales de Instancia si están presentes en tales hallazgos las circunstancias extraordinarias de error manifiesto, pasión, prejuicio o parcialidad, y no determinar que el Honorable Tribunal de Instancia cometió error manifiesto al no aplicar a los hechos del caso la jurisprudencia establecida en *Rodríguez v. Padilla*, 125 D.P.R. 486 y resolverlo a base del caso de *López Carrillo v. Soto Ayala*, 737 F.Supp. 150.

Expedido el auto de *certiorari* el 4 de abril de 1997, y habiendo comparecido la parte recurrida mediante alegato, confirmamos las sentencias recurridas y resolvemos que, a tenor con lo resuelto en *Rodríguez v. Padilla*, 125 D.P.R. 486 (1990), *McCrillis v. Autoridad de Navieras de P.R.*, 123 D.P.R. 113 (1989) y *Ramos v. Secretario de*

*Comercio,* 112 D.P.R. 514 (1982), y las leyes vigentes cuando el recurrente fue separado de su empleo, el cargo de Director Municipal de la Defensa Civil es el de un formulador de política pública que exige la afinidad política entre el alcalde y la persona que lo ocupa. Veamos.

## II

La Ley de la Defensa Civil de Puerto Rico, Ley Núm. 22 de 23 de junio de 1976, 25 L.P.R.A. sec. 171 *et seq.,* dispone que el cargo de Director Municipal de la Defensa Civil corresponde al servicio de confianza y, como tal, es un puesto de libre selección y remoción, pudiéndose destituir a la persona que ocupa el mismo sin necesidad de formular cargos ni celebrar vista previa. Véase *Rodríguez v. Padilla, supra,* pág. 499. No obstante lo anterior, en reiteradas ocasiones hemos resuelto que el derecho a la libre asociación y a no ser discriminado por ideas políticas, consagrados en la Primera Enmienda de la Constitución federal, así como en las secs. 1, 4, 6 y 7 del Art. II de la Constitución de Puerto Rico, también protegen a los empleados de confianza por lo que éstos no pueden ser destituidos por el hecho de militar en un partido distinto al de la autoridad nominadora. *Rodríguez v. Padilla, supra,* pág. 499; *McCrillis v. Autoridad de Navieras de P.R., supra,* pág. 137; *Ramos v. Secretario de Comercio, supra,* 516.

Como en cualquier otra acción civil, en los casos de reclamaciones por discriminación política recae sobre el empleado de confianza destituido el peso de la prueba en cuanto a que el despido se produjo por motivaciones políticas. A esos efectos, el empleado puede valerse de la presunción creada por jurisprudencia en *Báez Cancel v. Alcalde Mun. de Guaynabo*, 100 D.P.R. 982 (1972) mediante la cual el demandante tiene que probar dos hechos base específicos: (1) que no existen motivos racionales para su despido y (2) que ha sido sustituido por una persona perteneciente a un partido distinto al suyo y afín al de la autoridad nominadora. *Rodríguez v. Padilla, supra,* pág. 502; *McCrillis v. Autoridad de Navieras de P.R., supra,* págs. 140-41. La convergencia de ambos supuestos fácticos, probados por la preponderancia de la

evidencia, crea una presunción o inferencia de discrimen que provoca una transferencia en el peso de la prueba y obliga al Estado a derrotar la presunción de dos maneras: (a) mediante la refutación del hecho presumido, o (b) a través de la demostración de que la identidad en afiliación política entre el empleado y la autoridad nominadora es una condición necesaria para el desempeño cabal de las funciones propias del cargo público. *Rodríguez v. Padilla, supra,* pág. 500; *McCrillis v. Autoridad de Navieras de P.R., supra,* págs. 142-43.[2]

Para refutar el hecho presumido una vez se establece un caso *prima facie* de discriminación política, el Estado viene obligado a demostrar que el demandante fue destituido por otras razones válidas irrespectivas de sus creencias ideológicas. De ser este el caso, el empleado tiene entonces que establecer que su despido no se habría producido, *"salvo por (but for)"* su afiliación política. *McCrillis v. Autoridad de Navieras de P.R., supra,* pág. 142

Dicho esto, debemos señalar que, conforme a la doctrina desarrollada por el Tribunal Supremo de los Estados Unidos en los casos de *Branti v. Finkel,* 445 U.S. 507, (1980) y *Elrod v. Burns,* 427 U.S. 347, (1976) y adoptada por este Tribunal en *Ramos v. Secretario de Comercio, supra,* la unidad de afiliación política entre la autoridad nominadora y el empleado de confianza en ocasiones constituye un requisito válido a los fines de garantizar el recto y leal cumplimiento de las responsabilidades del cargo que se ocupa. Por ello, en la eventualidad de que el Estado  logre

---

[2]Sobre este particular, también debemos señalar que la presunción de inconstitucionalidad de la actuación gubernamental no se activa por meras alegaciones de discrimen político, sino que para que se configure el hecho presumido es necesario que el demandante **pruebe ambos hechos base conjuntamente.** Véase *Rodríguez v. Padilla, supra,* pág. 502; *McCrillis v. Autoridad de Navieras de P.R., supra,* pág. 140-42.

establecer la necesidad de dicha sintonía política, el derecho constitucional a la libertad de asociación de la persona particular, cede ante el interés público del Estado en preservar la eficacia y el buen funcionamiento del gobierno. *Rodríguez v. Padilla, supra,* pág. 500; *McCrillis v. Autoridad de Navieras de P.R., supra,* pág. 139; *Ramos v. Secretario de Comercio, supra,* pág. 516.

Finalmente, a los fines de determinar si la afinidad política es un requisito idóneo para garantizar el descargo cabal de los deberes de un funcionario público de confianza, **es necesario estudiar minuciosamente las responsabilidades del puesto en controversia con el objeto de precisar si éstas corresponden a las de un diseñador de política pública, a las de un copartícipe de información confidencial o a las de cualesquiera otro empleado cuyos deberes y obligaciones requieran algún grado de afinidad política.** *McCrillis v. Autoridad de Navieras de P.R., supra,* págs. 142-43.

III

Como bien señalaron ambos foros *a quo* en sus respectivas sentencias, el Cap. 211 de la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4.251 *et. seq.,* que trata específicamente sobre la organización administrativa de los municipios, nos revela que el cargo de Director de la Defensa Civil Municipal es uno de los siete más importantes en el organigrama administrativo del gobierno municipal, toda vez que la persona nombrada a ocupar dicho puesto está a cargo de una de las siete unidades administrativas del municipio. Así surge del Art. 6.001 de la ley, 21 L.P.R.A. sec. 4251:

> "La organización administrativa de la Rama Ejecutiva de cada municipio responderá a una estructura que le permita atender todas y cada una de las funciones y actividades de su competencia, según las necesidades de sus habitantes, la importancia de los servicios públicos a prestarse y la capacidad fiscal del municipio de que se trate. Todo municipio tendrá las siguientes unidades administrativas como parte de su estructura organizacional:
>
> (a) Oficina del Alcalde
> (b) Secretaría Municipal
> (c) Oficina de Finanzas Municipales
> (d) Departamento de Obras Públicas

         (e) Oficina de Administración de Recursos
             Humanos
         (f) Auditoría Interna
         **(g) Agencia Municipal de Defensa Civil"**


Al analizar las responsabilidades del director de dicha unidad administrativa, la juez de instancia, así como el panel unánime del Tribunal de Circuito de Apelaciones, concluyeron acertadamente que las mismas corresponden a las de un formulador de política pública y copartícipe de información confidencial. Las sentencias de ambos foros recalcaron que, de acuerdo al Art. 6.003 de la Ley de Municipios Autónomos, *supra,* 21 L.P.R.A. sec. 4253, los deberes de los directores de las unidades administrativas municipales, son los siguientes:

"§4253 Unidades Administrativas-Directores; deberes.

**Sin que se entienda como una limitación, los directores de unidades administrativas tendrán respecto de las mismas, los deberes que a continuación se establecen:**
(a) **Planificar y organizar el trabajo y dirigir, coordinar y supervisar las funciones y actividades que debe llevar a cabo la unidad administrativa bajo su responsabilidad o dirección.**
(b) **Coordinar las acciones y operaciones de sus respectivas unidades administrativas con las demás dependencias municipales y en particular con aquellas que cumplen funciones en los mismos campos o áreas de actividad.**
(c) **Impartir las instrucciones generales de carácter técnico y administrativo que deben regir las actividades de la unidad administrativa de que se trate.**
(d) **Establecer sistemas de control que permitan verificar el cumplimiento cuantitativo y cualitativo de los programas, proyectos y actividades de la unidad administrativa.**
(e) **Velar por el fiel cumplimiento de las normas legales y reglamentarias relativas a los asuntos bajo su dirección y estudiar y resolver los diversos problemas.**
(f) **Poner a la disposición de los auditores internos, de los auditores externos y de la Oficina del Contralor de Puerto Rico, los libros, expedientes, registros, documentos, informes y cualesquiera otra información que éstos le soliciten y sea pertinente para el desempeño de sus funciones.**
(g) **Prestar asesoría y consejo a la Asamblea en los campos de su competencia.**
(h) **Cooperar con el Comisionado en el diseño de la organización fiscal y del sistema uniforme de contabilidad computadorizado y los procedimientos de pagos, ingresos y propiedad del municipio.**
(i) Realizar las gestiones necesarias y adecuadas para la entrega y transferencia ordenada de todos los documentos, libros y propiedad bajo su custodia previo inventario al efecto, en todo caso que cese en sus funciones como director de la unidad administrativa de que se trate **y en todo caso que se produzca un cambio de administración, como lo dispone la sec. 4111 de este título.**

(j**) Rendir informes periódicos al Alcalde sobre las actividades y operaciones de la unidad administrativa y sobre el desarrollo y logros de los programas, obras, actividades y operaciones determinadas en los planes y proyecciones de la unidad administrativa de que se trate**.
(k) **Rendir un (1) informe al Alcalde, quien lo enviará a la Asamblea para la lectura por el Secretario de la misma en sesión ordinaria. Dicho informe incluirá los logros en el desarrollo de los planes y programas, las proyecciones de las unidades administrativas y las áreas o aspectos que requieren ser fortalecidos para lograr tales proyecciones.**" (Enfasis suplido).

Prácticamente todos estos deberes y facultades son propios de un diseñador de política pública y ciertamente más de uno conlleva una tarea que le corresponde a un copartícipe de información confidencial con el Alcalde. (Véanse con especial atención los incisos (a), (d), (g), (h), (j) y (k).)

Por otra parte, lo dispuesto en la Ley de Municipios Autónomos vino a complementar las responsabilidades ya conferidas por la Ley de la Defensa Civil al director municipal de dicha unidad administrativa, *supra.* El Art. 16 de dicha ley, 25 L.P.R.A. sec. 171(o), también refleja que la formulación de política pública y la participación en información confidencial con el alcalde son responsabilidades inherentes a la posición del Director Municipal de la Defensa Civil. Dicho artículo dispone en sus partes pertinentes que:

"§ 171o. Agencias Municipales de Defensa Civil.

[...]

La Agencia Municipal de Defensa Civil será dirigida por un Director Municipal de Defensa Civil nombrado por el Alcalde en consulta con el Director Estatal. El nombramiento del Director Municipal deberá ser aprobado por la Asamblea Municipal.

El Director Municipal será responsable directamente al Alcalde. No obstante, el Director Municipal organizará y administrará la Agencia Municipal de Defensa Civil de acuerdo con las directivas del Director Estatal. Sin embargo, se confiere al Alcalde la facultad de hacer aquellos cambios de personal que estime necesarios o convenientes dentro de la Agencia Municipal de Defensa Civil.
[...]

Cada Agencia Municipal de Defensa Civil deberá preparar y mantener al día un Plan Municipal de Operaciones para el Control de Emergencias y de Desastres y remitir copia del mismo al Director Estatal. El Plan Municipal deberá coordinarse, hasta donde sea posible, con el Plan Estatal.

Cada Agencia Municipal de Defensa Civil podrá dictar, enmendar y revocar aquellos reglamentos y emitir, enmendar y rescindir aquellas órdenes que sean necesarias para poner en ejecución las medidas y actividades de defensa civil dentro del municipio en cuestión. Los referidos reglamentos y órdenes, sus enmiendas, revocaciones o rescisiones tendrán vigencia tan pronto sean aprobados por el Director Estatal. [...]" (Énfasis suplido.)

Las funciones, atribuciones y responsabilidades del Director de la Defensa Civil de un municipio, según definidas por los Artículos 6.001 y 6.003 de la Ley de Municipios Autónomos, supra, y la sección 171(o) de la Ley de la Defensa Civil, supra, son abarcadoras y vitales para el buen desempeño del Alcalde. De ahí la disposición tajante de que "[e]l Director Municipal [de la Defensa Civil] será responsable directamente al Alcalde."

El Director de la Defensa Civil tiene la responsabilidad, en coordinación con el Director de la Defensa Civil Estatal, del diseño de la política pública en el área de la defensa civil. Además, tiene el deber de coordinar, con todas las otras unidades administrativas del municipio, los esfuerzos para estar preparados frente a cualquier emergencia que pueda presentarse, como huracanes, inundaciones, fuegos, explosiones, derrumbes de carreteras, accidentes aparatosos, terremotos y otros desastres naturales o creados por el ser humano.

Precisamente en reconocimiento de la verdadera naturaleza de las obligaciones del referido cargo, podemos interpretar que el legislador ha contemplado que el nombramiento de un director de unidad administrativa municipal no excederá nunca el plazo de cuatro años que dura la incumbencia del alcalde, a menos que éste decida retenerlo luego de su reelección. Adviértase que la Ley de Municipios Autónomos obliga al alcalde reelecto a resometer ante la asamblea municipal el nombramiento de aquellos directores de las unidades administrativas municipales que desee conservar en un segundo cuatrienio. En este sentido, el artículo 6.002 de dicha ley, 21 L.P.R.A. sec. 4252, dispone lo siguiente en sus partes pertinentes:

"Funcionarios; nombramiento

[...]

(a) Término para someter nombramiento.- El Alcalde someterá a la consideración de la Asamblea el nombramiento de toda persona designada como director de unidad administrativa no más tarde de los noventa (90) días siguientes a la fecha de efectividad del nombramiento. **Cuando el Alcalde no someta dicho nombramiento en el término antes establecido, el funcionario nombrado cesará inmediatamente en el cargo a la fecha de expiración de dicho término.**

(b) Término de la Asamblea para considerar nombramiento. – La Asamblea deberá aprobar o rechazar los nombramientos de funcionarios que somete el Alcalde no más tarde de los treinta (30) días siguientes a partir de la fecha de radicación en la oficina del Secretario de la Asamblea. Cuando la Asamblea no apruebe ni rechace los referidos nombramientos dentro del término de los treinta (30) días, para todos los fines de ley se entenderá que fueron confirmados por la Asamblea.

[...]

Al inicio de un nuevo cuatrienio, **el Alcalde reelecto** que decida retener uno o más de los funcionarios deberá someter su nombramiento como lo dispone el inciso (b) de esta sección."

Vemos, pues, que hasta un alcalde **reelecto** tiene la obligación de ley de resometer, para la aprobación de la Asamblea Municipal, los nombramientos de las personas que ocupan los puestos de directores de las distintas unidades administrativas municipales. Resulta más revelador aún, que el inciso (i) del Art. 6.003 establece como parte de las responsabilidades del director municipal de la defensa civil, la obligación de "[r]ealizar las gestiones necesarias y adecuadas para la entrega y transferencia ordenada de todos los documentos, libros y propiedad bajo su custodia previo inventario al efecto, en todo caso que cese en sus funciones como director de la unidad administrativa de que se trate **y en todo caso que se produzca un cambio de administración".(**énfasis suplido). Este lenguaje constituye un reconocimiento inequívoco por parte del legislador de que la persona que ocupa el puesto de director de la unidad administrativa municipal de la defensa civil no tiene derecho a permanecer en el mismo luego de un cambio de administración, ni tiene expectativa razonable de continuar en su empleo.

Por ello concluimos con certeza que, a tenor con lo dispuesto por los precitados artículos, el nombramiento del director de la unidad

administrativa municipal de la defensa civil expira al finalizar el cuatrienio dentro del cual fue nombrado por el alcalde y confirmado por la Asamblea Municipal. Este lenguaje no es sino el reconocimiento por parte del legislador de que, debido a la naturaleza de las funciones desempeñadas por los directores de unidades administrativas, la autoridad para hacer dichos nombramientos recae en el alcalde que asume por vez primera la incumbencia como ejecutivo municipal, o del que es reelecto en el cargo.

No tiene razón el peticionario al señalar como error que los tribunales *a quo* no alcanzaron el resultado idéntico obtenido en *Rodríguez v. Padilla, supra.*

En el caso de autos, la controversia se distingue claramente de lo resuelto por este Tribunal en febrero de 1990 en el caso de *Rodríguez v. Padilla, supra.* Allí sostuvimos la consecuencia lógica de la norma enunciada en *McCrillis v. Autoridad de Navieras, supra,* y discutida más arriba: cuando un empleado de confianza establece un caso *prima facie* de discrimen político, el Estado viene obligado a refutar efectivamente la presunción o a demostrar que el cargo en cuestión es uno de aquellos para cuyo fiel desempeño la afinidad política es un requisito adecuado; de lo contrario, los tribunales vienen obligados a fallar a favor del demandante.

El peticionario señala que este Tribunal debe revocar las sentencias recurridas debido a que "la parte demandada no probó que la afiliación política del demandante [...] fuera un requisito indispensable para el desempeño del cargo [...]". Según éste, la única prueba desfilada por el municipio consistió en el testimonio del alcalde mediante el cual se intentaba derrotar el caso *prima facie* de discriminación política. Como parte de la prueba desfilada por el demandado el primer ejecutivo municipal declaró que los directores de las unidades administrativas, como el de la Defensa Civil, son los que contribuyen a realizar la obra de gobierno y por ello deben tener lealtad para con el alcalde. Siendo el demandante un activista político

del partido contrario, se entendía que no iba tener esa lealtad.[3] Sin embargo, contrario a lo ocurrido en *Rodríguez,* en el caso de autos surge claramente de la sentencia de instancia que el peticionario no cumplió con el requisito previo de activar la presunción de discrimen[4].

Finalmente, con posterioridad a nuestra decisión en *Rodríguez, supra,* la Asamblea Legislativa aprobó, en agosto de 1991 la aludida Ley de Municipios Autónomos*,* arrojando nueva luz sobre la naturaleza de las responsabilidades y

---

[3] En la sentencia de instancia se señala: "[e]l demandante pertenecía al PPD antes y mientras ocupó el puesto [en controversia] y era un activista político de su partido. Ocupó varios puestos en el partido, incluyendo el de Comisionado Alterno, secretario y representante a la Junta de Inscripción Permanente. [...]."

[4] El peticionario **no ofreció prueba alguna que estableciera un caso *prima facie* de discrimen político como lo exige nuestra jurisprudencia sobre esta materia.** Por el contrario, el peticionario sugiere que se debe considerar establecido el caso de discrimen por la declaración del alcalde demandado a los efectos de que entendía que el puesto de director municipal de la defensa civil era uno donde la identidad entre afiliación política de la persona que lo ocupaba y la autoridad nominadora, eran necesarias para el buen funcionamiento de la administración pública. Tal "admisión" surge dentro del contexto de declaraciones realizadas con el propósito de rebatir una presunción de discrimen que nunca fue activada según lo establecido en *McCrillis, supra*. Allí señalamos que el demandado **"puede presentar cualquiera de sus dos (2) defensas, <u>o ambas</u>, luego de que el demandante haya probado los hechos básicos necesarios para que entre en vigor la presunción de *Báez Cancel v. Alcalde Mun. de Guaynabo, supra, y haya establecido su caso prima facie"*.** *Id.,* pág. 142. No se puede tomar como admisión directa de discrimen la declaración del alcalde encaminada a derrotar el caso *prima facie* de discriminación política, según se lo permite expresamente la jurisprudencia aplicable. De lo contrario, ¿cómo podría el Estado derrotar la presunción de discrimen presentando <u>ambas defensas</u> según lo señalado en *McCrillis,* si al ofrecer evidencia de que las responsabilidades del puesto son de una naturaleza tal que hacen de la afinidad política de la persona que lo ocupa un factor determinante para el fiel desempeño del cargo, se estaría, según sostiene el peticionario, ofreciendo prueba directa de discrimen?

deberes del cargo de director municipal de la unidad administrativa de la defensa civil. Como señalamos anteriormente, ambos tribunales muy correctamente pusieron particular énfasis en las disposiciones del Art. 6.003 de dicha ley (responsabilidades y deberes de los directores) al momento de resolver que, debido a la naturaleza de sus funciones, el cargo de director de la unidad administrativa municipal de la defensa civil es uno que puede válidamente requerir la armonía política entre la persona que lo ocupa y el alcalde.

El peticionario intima que los tribunales *a quo* estaban impedidos de considerar tales disposiciones, que son de tanta importancia a los fines de resolver justicieramente la controversia en el caso de marras, debido a que, alegadamente, nunca se pasó prueba sobre las funciones que llevan a cabo los directores de las unidades administrativas. Aunque de la sentencia de instancia no surge si las disposiciones fueron presentadas en evidencia como parte del desfile de la prueba del demandado o si, por el contrario, tales consideraciones fueron levantadas *sua sponte* por el tribunal de instancia, tal disquisición resulta ser irrelevante. Si este último fuera el caso, como alega el peticionario, el resultado alcanzado por los foros *a quo* se vería inalterado.

Los tribunales de justicia están "[...]**obligados** a tomar conocimiento judicial de las Constitución y leyes del Estado Libre Asociado de Puerto Rico [...]". (énfasis suplido). Regla 12 de Evidencia, 32 L.P.R.A. Ap. IV, R. 12. Sobre este particular, nos señala el distinguido profesor Rolando Emmanuelli en su *Prontuario de Derecho Probatorio Puertorriqueño,* Ed. CORRIPIO (1994), pág. 122 que:

> "Es cuestionable que se ignore una disposición [...] de ley por el mero hecho de que las partes no solicitaron y pusieron en condiciones al tribunal para que tomara conocimiento judicial. Los tribunales existen para aplicar las leyes a los hechos y de esa forma resolver las controversias. **¿Como es posible que dentro de esa función esencial de un tribunal tenga margen para ignorar una disposición legal aplicable al caso porque no se le ofreció la oportunidad de "conocerla"?**
> (énfasis suplido).

Este lenguaje directo resalta algo elemental y evidente: que al adjudicar las controversias presentadas ante sí, los tribunales no pueden resolver al margen de lo dispuesto por los ordenamientos jurídicos aplicables en nuestra jurisdicción. El argumento del peticionario ignora las disposiciones pertinentes de la Ley de Municipos Autónomos y choca contra la descripción allí contenida de los verdaderos deberes y responsabilidades del director municipal de la defensa civil.

Por todo lo anterior, y en vista de la naturaleza de las responsabilidades del puesto de Director de la Defensa Civil del Municipio de Peñuelas, así como del lenguaje utilizado por el legislador en todo lo referente a los nombramientos de los directores de las unidades administrativas municipales, nos vemos compelidos a concluir que la afinidad política con la autoridad nominadora es un requisito adecuado para garantizar el fiel y leal desempeño del cargo público aquí envuelto.

Procede, pues, la confirmación de las sentencias recurridas y la desestimación de la acción instada por el demandante peticionario. Se dictará sentencia de conformidad.

**BALTASAR CORRADA DEL RIO**
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Luis Segarra Feliciano

    Demandante-Peticionario

                        CC-97-103       CERTIORARI

      v.

Municipio de Peñuelas, et al.

    Demandados-Recurridos

SENTENCIA

San Juan, Puerto Rico, a 16 de junio de 1998.

Por los fundamentos expuestos en la Opinión precedente, la cual se hace formar parte de esta sentencia, se confirman las sentencias recurridas y se desestima la acción instada por el demandante-peticionario.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente con opinión escrita a la cual se une el Juez Asociado señor Rebollo López. El Juez Asociado señor Negrón García no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

JUAN LUIS SEGARRA FELICIANO

    Demandante-Peticionario


        vs.                CC-97-103     CERTIORARI


MUNICIPIO DE PEÑUELAS Y OTROS

    Demandado-Recurridos


Opinión disidente emitida por el Juez Asociado señor FUSTER BERLINGER, a la cual se une el Juez Asociado señor REBOLLO LOPEZ.


San Juan, Puerto Rico, a 16 de junio de 1998.

> **"I hold the hope that in calmer times, when present pressures, pasions and fears subside, this or some later Court will restore the First Amendment liberties to the high preferred place where they belong in a free society."**
>
> **Hugo Black**

Otra vez más[5] en el pasado reciente, este Tribunal elude su función de dar plena vigencia a las garantías constitucionales establecidas en nuestro ordenamiento jurídico para la protección de los derechos individuales. Otra vez más, antepone los intereses egoístas del tribalismo político por encima de los valores de la igualdad y del bien común. Otra vez más deja pasar la oportunidad para extirpar de

---

[5] Véase mis opiniones disidentes sobre el particular en <u>Zambrana v. González</u>, sentencia del 10 de junio de 1998; en <u>Irizarry v. E.L.A.</u>, op. de 19 de marzo de 1997, 142 D.P.R. __, 97 JTS 33; y en <u>García v. Mun. de Arroyo</u>, op. de 15 de mayo de 1996, 140 D.P.R. __, 96 JTS 68.

raíz el grave vicio del discrimen partidista, que permea la administración pública del país, sea ésta azul o roja.  En esta ocasión, la decisión de la mayoría no sólo carece de las altas miras que debe caracterizarle, sino que es además patentemente contraria a numerosas opiniones de este Foro, emitidas en tiempos más esclarecidos cuando prevalecía una actitud más denodada entre sus integrantes.  Veamos.

I

Tenemos ante nos de nuevo el recurrente problema[6] del despido político de un director municipal de defensa civil.  Nos corresponde determinar si tal despido, basado en consideraciones político-partidistas, es válido.

A.  Los hechos

El recurrente fue nombrado y juramentado para el cargo de Director de la Defensa Civil del Municipio de Peñuelas, en junio de 1985, por un alcalde perteneciente al Partido Popular Democrático, al cual el recurrente estaba afiliado y en el que militaba activamente.

En las elecciones generales de 1992, resultó electo el candidato a alcalde del Partido Nuevo Progresista.  A raíz de ello, se le informó al recurrente que se le iba a reubicar en otro puesto, razón por la cual debía presentarse a la Oficina de Personal del Municipio.  Siguiendo esa directriz, el recurrente acudió en varias ocasiones a dicha oficina, pero nunca se le informó cuál sería su nuevo estatus ocupacional.  El 1 de marzo de 1993, estando el recurrente de vacaciones, se le notificó que se le separaría del cargo que había estado ocupando por más de siete años.  El 26 de abril de 1993, el recurrente instó la demanda de autos.  Reclamó la reposición al puesto de Director Municipal de la Defensa Civil; adujo haber sido despedido por razones políticas.  Luego de haberse celebrado la vista correspondiente, el Tribunal de Primera Instancia desestimó la demanda y concluyó que, conforme las leyes pertinentes, el cargo en cuestión era uno de libre nombramiento y remoción, por ser de naturaleza política, y que como tal, la afiliación política del candidato era un asunto que podía tomarse válidamente en cuenta al decidir sobre el particular.  **Como cuestión de hecho, determinó que el despido del recurrente se había basado en consideraciones político-partidistas.**

---

[6]Hemos encarado antes este asunto.  Véase, Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486 (1990); Navedo v. Municipio de Barceloneta, 113 D.P.R. 421 (1987); Collazo Cartagena v. Hernández Colón, 103 D.P.R. 870 (1975); Báez Cancel v. Alcalde Mun. de Guaynabo, 100 D.P.R. 982 (1971).

Inconforme con este dictamen, el recurrente acudió ante el Tribunal de Circuito de Apelaciones. Dicho foro confirmó la sentencia de instancia, al resolver también que el cargo en cuestión era de tal naturaleza que la afiliación política del candidato a nombramiento era una consideración válida a tomarse en cuenta.

El recurrente entonces acudió a nos oportunamente e hizo el siguiente señalamiento de error:

"Erró el Honorable Tribunal de Circuito de Apelaciones al negarse a revisar la Sentencia dictada por el Honorable Tribunal de Primera Instancia, Sala Superior de Ponce, González Degró, Juez, bajo el fundamento de que el foro apelativo sólo intervendrá con las determinaciones de los Tribunales de Instancia si están presentes en tales hallazgos las circunstancias extraordinarias de error manifiesto, pasión, prejuicio o parcialidad, y no determinar que el Honorable Tribunal de Primera Instancia cometió error manifiesto al no aplicar a los hechos del caso la jurisprudencia establecida en Rodríguez Cruz v. Padilla, 125 D.P.R. 486 y resolverlo a base del caso de López Carrillo v. Soto Ayala, 737 F. Supp. 150."

El 4 de abril de 1997 expedimos el certiorari solicitado.

B. El precedente aplicable al caso

Como puede observarse, el recurrente nos pide que resolvamos conforme lo esbozado en Rodríguez Cruz v. Padilla Ayala, supra, (en adelante, Rodríguez Cruz), y por tanto, que revoquemos la sentencia del Tribunal de Circuito de Apelaciones que es contraria a ello. Tiene razón el recurrente.

El esquema jurídico aplicable al caso de autos es sencillo. Lo formulamos de manera clara en Rodríguez Cruz, supra,: Cuando un empleado público de confianza que ha sido despedido establece un caso prima facie o presunción de discrimen político,

". . . se transfiere al Estado el peso de la prueba para que refute la evidencia de discrimen presentada o pruebe afirmativamente que la afiliación política es "requisito apropiado" para el desempeño efectivo del cargo en cuestión". Id., a las págs. 502-503.

Según la norma consagrada en nuestra jurisprudencia, activada la presunción de discrimen político, el Estado, tiene entonces sólo dos opciones: refutar

la prueba de discrimen político presentada por el demandante, o en su defecto, **probar** que la afiliación política es un requisito apropiado para el desempeño efectivo del empleado en el cargo en cuestión.

La norma aludida está firmemente enraizada en nuestra jurisprudencia. Como expresamente señalamos en McCrillis v. Aut. Navieras de P.R., 123 D.P.R. 113, 139, (en adelante, McCrillis), se trata de una norma probatoria de naturaleza constitucional. La referida obligación de "desfilar prueba", que recae sobre la autoridad que despidió al empleado de confianza, la reconocimos por primera vez en Báez Cancel v. Alcalde de Mun. Guaynabo, supra, y la hemos reiterado desde entonces en numerosas ocasiones, incluso en otro caso que, como Báez Cancel y como Rodríguez Cruz, también trataba sobre el despido de un director municipal de defensa civil. Navedo v. Mun. de Barceloneta, supra. Véase, además, Feliciano v. Mun. de Fajardo, 115 D.P.R. 675 (1984); Colón v. CRUV, 115 D.P.R. 503 (1984); Clemente v. Dpto. de la Vivienda, 114 D.P.R. 763 (1983); Franco v. Mun. de Cidra, 113 D.P.R. 260 (1982); Ramos v. Srio. de Comercio, 112 D.P.R. 514 (1982).

En el caso de autos, el foro de instancia entendió que el despido en cuestión se basó en razones partidistas. En efecto, según lo expresó dicho tribunal, el propio alcalde que despidió al recurrente admitió en la vista de instancia que "los directores de dependencias del Municipio, como el de la Defensa Civil, son los que contribuyen a que se lleve a cabo la obra de gobierno y por ello deben tener lealtad para con el Alcalde y siendo el demandante un activista político del partido contrario, se entendía que no iba a tener esa lealtad". La determinación judicial aludida, de que la razón del despido fue el activismo político del recurrente, nos obliga. Ello conforme la reiterada norma de que no alteraremos las conclusiones de hecho del foro de instancia, cuando no se ha demostrado que éste haya incurrido en error, prejuicio o parcialidad al formularlas. Quiñones López v. Manzano Poza, op. de 25 de junio de 1996, 141 D.P.R. __, 96 JTS 95.

La aludida admisión del alcalde que despidió al recurrente activó la presunción de discrimen político, **la cual el Estado no refutó**. La admisión de motivaciones políticas, por parte del propio alcalde que despidió al recurrente en el caso de autos, es idéntica a la que activó la presunción de discrimen político en Rodríguez Cruz, supra. En éste, la

prueba de discrimen político que aceptamos como suficiente para establecer dicha presunción consistió precisamente en la admisión del alcalde Padilla de que había destituido al director de defensa civil anterior porque éste no pertenecía a su partido político y por tanto, no era de su confianza. Id., a la pág. 505.

Por otro lado, el caso de autos es también idéntico al de Rodríguez Cruz en cuanto a que la autoridad nominadora no cumplió con la norma probatoria para refutar la prueba de discrimen político del demandante. Como en Rodríguez Cruz, en el caso de autos no hay nada en el expediente que demuestre que la autoridad nominadora refutó la presunción de discrimen, o que **probó** que la afiliación partidista era un requisito apropiado para el desempeño del cargo de Director Municipal de la Defensa Civil. El foro de instancia determinó a base de la prueba que dicho funcionario había sido destituido por razón de su afiliación política, pero entonces concluyó, motu proprio, que tal afiliación era requisito apropiado para dicha posición. **No se pasó prueba sobre tal asunto**, como lo requiere la jurisprudencia citada. Sencillamente, el foro de instancia llegó a tal conclusión por su cuenta, como cuestión de derecho, amparándose para ello en una sentencia del tribunal de distrito federal de Puerto Rico. No llegó a la referida conclusión por prueba presentada por la autoridad nominadora demandada. Erró, pues, al proceder de tal modo.

Debe enfatizarse que en el caso de autos, como en Rodríguez Cruz, supra, la **única razón** ofrecida para el despido en cuestión fue la de que el funcionario no tenía la confianza del alcalde, por no pertenecer a su partido político. El despido ocurrió **dos meses después** de que el nuevo alcalde ocupase su cargo, y en ningún momento se alegó que se le destituía por entender que el término del director municipal de defensa civil había expirado.

En resumen, pues, el caso de autos es idéntico en todos los extremos pertinentes al de Rodríguez Cruz, supra. Se trata de un despido presuntamente ocasionado sólo por discrimen político, en el cual el Estado no desfiló prueba para derrotar la presunción. Por ende, para honrar la clara doctrina constitucional que prevalece en nuestra jurisdicción, y ser fieles a nuestros propios precedentes, debemos resolver aquí de igual modo que hicimos en Rodríguez Cruz, supra.

## II

La mayoría del Tribunal, por razones realmente inexplicables, abandona lo resuelto y pronunciado en Rodríguez Cruz, supra, aunque tal caso es en lo esencial idéntico al de autos. Rehusa aplicarlo aquí, sin que haya razones válidas para distinguir un caso del otro.

La mayoría le da gran énfasis a que supuestamente el cargo aludido tiene ahora un término fijo, e intima así que el nombramiento del recurrente había expirado. Ello, sin embargo, no constituye realmente un fundamento suficiente para no seguir aquí el precedente de Rodríguez Cruz, supra. Veamos.

La Ley de Municipios Autónomos vigente **no fija** un término de duración para el cargo de director de una unidad administrativa municipal. En cambio, dispone de manera expresa que dichos cargos serán de **confianza** (21 L.P.R.A. sec. 1350). Los cargos de confianza, como se sabe, están fijados por ley como de libre selección y remoción (3 L.P.R.A. sec. 1350).

La Ley Municipal de 1960 disponía expresamente que los directores de unidades administrativas municipales desempeñarían sus cargos "por el término para el cual el alcalde hubiese sido electo". (21 L.P.R.A. sec.

1263, derogada).  **El alcalde sólo los podía despedir por justa causa, previa formulación de cargos**.

La Ley Orgánica de los Municipios de 1980 alteró fundamentalmente el esquema de la ley anterior sobre lo que aquí nos concierne. Por primera vez se dispuso en ésta que los directores de las unidades administrativas municipales serían empleados de **confianza**, a ser nombrados por el alcalde sujeto a confirmación de la Asamblea Municipal. Se eliminó todo lo relativo al término del nombramiento y el despido por justa causa. Esta ley, además, estableció **un procedimiento detallado** para regular lo relativo a la aludida confirmación de dichos nombramientos, que la Ley de Municipios Autónomos vigente recoge esencialmente en su Artículo 6.002. Sin embargo, este artículo contiene una disposición que no aparecía en la ley anterior, que provee para que el alcalde reelecto que decida retener algún funcionario municipal, deba obtener de nuevo la aprobación de la Asamblea Municipal.

Quizás pueda interpretarse que la disposición aludida fija tácitamente un término a los cargos en cuestión, aunque ello no es tan claro a la luz del historial relatado antes. Podría ser que esa disposición sólo significa que los cargos son de libre selección y remoción por el alcalde, pero que para que el incumbente los ocupe por un segundo término, debe obtener el aval de la Asamblea Municipal. Ciertamente, el texto del artículo aludido está dedicado mayormente a regular lo relativo a la referida confirmación por la Asamblea Municipal.

Sin embargo, debe notarse que independientemente de si la ley vigente de modo tácito fija un término o no, ello no puede prevalecer sobre la **protección constitucional** que precluye el discrimen político. Si es ilícito destituir a un empleado de confianza por discrimen cuando no se ha **probado** que la afiliación partidista es un requisito indispensable del cargo, también lo es destituir a un empleado de término fijo, si ello se hace sólo por discrimen político. En el caso de epígrafe, el funcionario fue despedido **dos meses después** del nuevo alcalde ocupar su cargo, **no porque el término hubiese expirado dos meses antes**, sino por razón de su afiliación partidista. En ningún momento se alegó que se le destituía porque el cargo hubiese expirado. Por ello, el argumento sobre la duración del nombramiento del recurrido es realmente una pobre racionalización para encubrir el craso discrimen político que la mayoría legitimiza en su opinión.

III

En su opinión, la mayoría del Tribunal emite su decisión aunque carece de prueba sobre la cuestión de si la afiliación política es un requisito necesario para el desempeño del cargo de director municipal de defensa civil. Se aparta de la doctrina establecida sobre el particular y sustituye la falta de prueba por un análisis parcializado de las normas relativas a la Defensa Civil. De ese modo fuerza la conclusión de que para los nombramientos al cargo en cuestión, la afiliación partidista es un requisito idóneo.

Debe resaltarse que este proceder constituye un claro abandono de la doctrina sobre el particular que este Tribunal tenía establecida. Como hemos indicado ya, en Rodríguez Cruz, supra, este Tribunal le ordenó al Alcalde de Trujillo Alto, del Partido Popular, a reponer en el puesto de Director de la Defensa Civil Municipal al funcionario que ocupaba dicho cargo anteriormente, cuando el alcalde era del Partido Nuevo Progresista. Nuestro dictamen en ese caso reconoció que el cargo en cuestión era uno de confianza. No obstante, decidimos allí que en vista de que la destitución del funcionario en cuestión obedeció a motivaciones políticas, el nuevo alcalde popular no podía sustituirlo porque éste "no presentó prueba alguna de que la afiliación política [del funcionario] fuera un requisito apropiado para el desempeño efectivo del cargo." Id., a la pág. 499. Reiteramos en dicha opinión la norma constitucional de que aun en cargos de confianza, una vez se establece un caso *prima facie* de discrimen político, "se transfiere al Estado el peso de la prueba para que refute la evidencia de discrimen presentada o pruebe afirmativamente que la afiliación política es un requisito apropiado para el desempeño efectivo del cargo en cuestión". Id., a las págs. 502-503.

Nuestro dictamen en Rodríguez Cruz, supra, fue consecuencia directa de dos opiniones previas emitidas en 1982. En Ramos v. Srio. de Comercio, 112 D.P.R. 514 (1982), ya habíamos resuelto que aun en casos de cargos públicos de confianza, una persona no podía ser destituida sólo por razón de afiliación partidista, a menos que la autoridad nominadora desfilara "**prueba** demostrativa de que la afiliación política particular del empleado es requisito apropiado para el desempeño efectivo del cargo en cuestión." Id., a la pág. 516. El otro caso fue el de Navedo v. Municipio de Barceloneta, 113 D.P.R. 421 (1982), en el cual devolvimos a JASAP el caso de un Director Municipal de la Defensa Civil que había sido destituido por un nuevo alcalde, para examinar si dicho alcalde podía **demostrar** que la afiliación partidista del funcionario era un requisito apropiado para el desempeño del cargo.

La mayoría descansa en McCrillis v. Autoridad de Navieras, supra, para tratar de justificar su decisión, pero resulta que ello sólo puede hacerse si se distorsiona lo allí resuelto, como lo hace la mayoría aquí.

En efecto, la decisión de este Tribunal en McCrillis v. Autoridad de Navieras, supra, es enteramente consistente con las decisiones previas y posteriores a ésta, que ya han sido mencionadas. Al igual que en Rodríguez Cruz, supra, que en Navedo v. Mun. de Barceloneta, supra, y que en Ramos v. Srio. de Comercio, supra, en McCrillis, supra, se señaló claramente que para derrotar la protección constitucional que tienen aún los empleados públicos de confianza de no sufrir discrimen político, era necesario "desfilar **prueba** demostrativa de que la afiliación política es un requisito apropiado para el desempeño efectivo del cargo en cuestión". McCrillis, supra, a la pág.139. Se dijo en dicha opinión, que la autoridad nominadora "viene obligada a ofrecer **prueba** conducente a demostrar la no existencia [de dicho requisito]" Id., a la pág. 141. Más importante aun, en McCrillis, supra, a la pág. 143, se citó nuestra decisión previa en Feliciano v. Mun. de Fajardo, supra, y en Colón v. Alcalde de Ceiba, 112 D.P.R. 740 (1982), para reiterar que al examinar si la afiliación partidista es un requisito adecuado para un cargo, "es preciso considerar los poderes inherentes a un puesto en particular, *vis-a-vis* las funciones desempeñadas por el funcionario particular que ocupa ese puesto". Es decir, **que no basta** examinar meramente cuáles son los deberes del cargo, sino que es necesario profundizar en cuanto a cuáles son las funciones realmente desempeñadas, lo que a su vez depende de la **prueba** correspondiente. Así se había establecido antes, en Feliciano v. Mun. de Fajardo, supra, y en Colón v. Alcalde de Ceiba, supra, en los cuales se había resuelto que "no es la etiqueta ni la descripción escrita de los deberes lo determinante, sino la naturaleza real de las funciones" Id., a las págs. 679 y 744-45, respectivamente.

En resumen, pues, hasta ahora existía una **clara corriente jurisprudencial**, reiterada una y otra vez en muchas decisiones de este Tribunal, en cuanto a que, para determinar si la afiliación política es condición indispensable para el desempeño de un puesto, **era necesario investigar lo que realmente se hacía en dicho puesto**, con arreglo a la **prueba** correspondiente. Se trataba de una cuestión de hecho primordialmente. Normas relativas al cargo, como las que se analizan en la opinión mayoritaria existían igualmente en los precedentes antes citados, pero este Tribunal no las examinó, en ninguno de ellos, ni se refirió a tales normas de modo alguno. Es evidente que se entendía en dichos precedentes, que la determinación sobre la idoneidad de la

afiliación política para el desempeño del cargo era una cuestión **fáctica**, no normativa. Eso fue lo que este Foro había resuelto en términos expresos y claros en los precedentes aludidos, de los cuales ahora la mayoría se aparta.

IV

Por otro lado, el aludido análisis <u>normativo</u> que hace la mayoría es uno <u>muy parcializado</u>. Se toman en cuenta algunas normas relativas al cargo de director municipal de defensa civil, pero se <u>menosprecian otras</u>, que son de mayor importancia. Si se examinan cuidadosamente las leyes relativas al cargo en cuestión, se notará que aunque un Director de la Defensa Civil Municipal es nombrado por el alcalde correspondiente, su primordial obligación en dicho cargo es la de implantar en el municipio las directrices gubernamentales provenientes exclusivamente de la Defensa Civil Estatal. Es decir, la función principal del director municipal es la de llevar a cabo localmente las políticas sobre defensa civil que establece el Director Estatal. Ello surge claramente de lo dispuesto, por un lado, en la sección 171o de la Ley de la Defensa Civil, <u>supra</u>, que establece, en lo pertinente, lo siguiente:

### Agencias Municipales de Defensa Civil

"Se ordena a todos los municipios del Estado Libre Asociado de Puerto Rico a establecer una Agencia Municipal de Defensa Civil, **de acuerdo con las directivas que el Director Estatal establezca a esos fines**, según dispone la sec. 171e(N)(i) de este título.

La Agencia Municipal de Defensa Civil **será dirigida por un Director Municipal de Defensa Civil nombrado por el Alcalde en consulta con el Director Estatal**. El nombramiento del Director Municipal deberá ser aprobado por la Asamblea Municipal.

El Director Municipal **será responsable directamente al Alcalde. <u>No obstante, el Director Municipal organizará y administrará la Agencia Municipal de Defensa Civil de acuerdo con las directivas del Director Estatal.</u> Sin embargo, se confiere al Alcalde la facultad de hacer aquellos cambios de personal que estime necesarios o convenientes dentro de la Agencia Municipal de Defensa Civil.**

La Agencia Municipal de Defensa Civil de cada municipio ejercerá sus funciones dentro del límite jurisdiccional del municipio, pero **<u>podrá ejercer aquellas funciones fuera del límite municipal que sean necesarias a los propósitos de este Capítulo o que le sean requeridas por el Director Estatal o por el Gobernador</u>**. [. . .]

**<u>El presupuesto de gastos de la Agencia Municipal de Defensa Civil deberá ser preparado en consulta con el Director Estatal y antes de ser sometido al Secretario de Hacienda</u>**.

Cada Agencia Municipal de Defensa Civil deberá preparar y mantener al día un Plan Municipal de Operaciones para el Control de Emergencias y de Desastres y **remitir copia del mismo al Director Estatal. El Plan**

**Municipal deberá coordinarse, hasta donde sea posible, con el Plan Estatal.**

**Cada Agencia Municipal de Defensa Civil podrá dictar, enmendar y revocar aquellos reglamentos y emitir, enmendar y rescindir aquellas órdenes que sean necesarias para poner en ejecución las medidas y actividades de defensa civil dentro del municipio en cuestión. Los referidos reglamentos y órdenes, sus enmiendas, revocaciones o rescisiones tendrán vigencia tan pronto sean aprobados por el Director Estatal. [. . .]"** (Enfasis suplido)

Por otro lado, la Ley Núm. 51 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 et seq., también conocida como Ley de Municipios Autónomos, dispone específicamente que la Agencia Municipal de Defensa Civil es una de las unidades administrativas de cada municipio. Sin embargo, contrario a lo que sucede con todas las demás unidades administrativas, la Agencia Municipal de Defensa Civil no queda sujeta por dicha Ley a las autoridades municipales, sino al Director Estatal de la Defensa Civil. Dispone así la sección 4253 de la Ley de Municipios Autónomos:

"La organización administrativa de cada municipio, así como las demás funciones específicas que se asignen a las distintas unidades administrativas y su coordinación serán reguladas mediante sus respectivos reglamentos orgánicos y funcionales aprobados por la Asamblea [municipal], **excepto que dicha aprobación no será requerida para la Agencia Municipal de Defensa Civil. En cuanto a esta última, el Director de la Agencia Municipal de Defensa Civil organizará y administrará dicha unidad de acuerdo con las directrices del Director Estatal de conformidad con las secs. 171 et seq. del Título 25, conocidas como "Ley de la Defensa Civil de Puerto Rico. [. . .]"** (Enfasis suplido.)

De lo señalado antes surge claramente que las labores de un Director de la Defensa Civil Municipal están dirigidas primordialmente a la **implantación** de la política pública previamente formulada por el Director Estatal de la Defensa Civil. El director municipal, pues, es esencialmente un ejecutante, no un diseñador de política pública.

Debe considerarse, además, que la política pública que implanta el director municipal de defensa civil no es la del alcalde o la de la Asamblea Municipal sino la que se desarrolla estatalmente, para todo el país. Por ello, las funciones que realiza un director municipal son esencialmente similares a las que realizan todos los otros directores municipales de la Defensa Civil en Puerto Rico. Se trata de labores y tareas uniformes, que en lo medular no varían de municipio a municipio. La responsabilidad pública y gerencial de estos funcionarios no está primordialmente atada a la obra de gobierno específica que ha formulado un alcalde particular u otro, sino que responde más bien a fines y criterios

estatales, que rebasan los objetivos políticos propios de las autoridades municipales.

Esta visión de la función de un director municipal de defensa civil ya la habíamos formulado y reiterado en casos anteriores, que la mayoría desechó totalmente. En Collazo Cartagena v. Hernández Colón, supra, este Tribunal resolvió que la Ley de Defensa Civil prevalece sobre la Ley Municipal en casos de controversias sobre el personal de defensa civil. Tanto en Collazo Cartagena, supra, como en Báez Cancel, supra, se hizo hincapié en que la defensa civil es una tarea que por su propia naturaleza requiere centralización en sus funciones y operaciones. Se intimó claramente que la injerencia local por los alcaldes de 76 municipios puede dar lugar a conflictos de criterio que entorpecerían la acción efectiva en casos de emergencias graves. Báez Cancel, supra, a la pág. 991.

La Ley de Defensa Civil vigente no es idéntica a la que estaba en vigor cuando se decidieron estos dos casos. Pero, en lo esencial, la ley actual sujeta al director municipal a las directivas del Director Estatal. Más aun, el director municipal también está sujeto a dirección y control directo por el propio Gobernador de Puerto Rico, mediante proclama, en situaciones de emergencia o de desastre. 25 L.P.R.A. sec. 1718. Ya habíamos establecido, pues, la naturaleza poco local del cargo en cuestión, aunque la mayoría ahora hace caso omiso de todo ello.

V

Finalmente, debe considerarse también la naturaleza substantiva del cargo en cuestión. Como se sabe, la Defensa Civil juega un papel importante en la prevención y manejo de emergencias ocasionadas por desastres naturales y de otra índole. Su misión central tiene que ver con la mitigación de los efectos adversos de huracanes, deslizamientos, terremotos, inundaciones repentinas, y otros fenómenos similares. Le corresponde la tarea de prevenir y socorrer a los afectados por los desastres aludidos, salvaguardando vidas y protegiendo propiedades. El desempeño adecuado de esta ingente labor depende en gran medida de los conocimientos y la preparación de las personas que integran la Defensa Civil. Se trata, pues, de una gestión de naturaleza esencialmente profesional, no política. No hay, ni debe haber, espacio para las preferencias político-partidistas al momento de encarar las emergencias que

amenazan el bienestar de la gente. Lo que debe valorarse respecto a ese cargo es la competencia de la persona que lo ocupa, no de qué partido es.

A la luz de todo lo anterior, es evidente que el cargo de un director municipal de defensa civil, aunque es uno de confianza, no es tal que justifique un despido por motivos político-partidistas. Es claro que no se trata de un cargo en el cual se formula política pública municipal al extremo que la afiliación política sea un requisito necesario para su desempeño efectivo. Es comprensible que un alcalde prefiera rodearse siempre de personas que le profesen lealtad partidista, pero ello no le confiere en todo caso el derecho a discriminar en contra de quienes ostentan creencias políticas distintas. Báez Cancel, supra. Como hemos señalado ya, el innegable imperativo que tienen los funcionarios municipales de defensa civil de que sus acciones no responden a preferencias partidistas locales sino que sean parte de un esfuerzo integrado y coordinado a través de todo el país, unido al hecho evidente de que las emergencias que atiende la defensa civil no tienen remedios partidistas, sugieren que las funciones del director municipal no tienen gran relación con los asuntos propiamente políticos del alcalde incumbente. Es precisamente por ello que para validar una destitución como la del caso de epígrafe, es necesario que se **pruebe**, con hechos concretos sobre el desempeño real del cargo, que el requisito de afiliación política es legítimo. Es necesario demostrar porqué tal afiliación es necesaria, cuando la naturaleza del cargo apunta a lo contrario.

En resumen, pues, a la luz de todo lo anterior, hay base para al menos **cuestionar** si un director de defensa civil municipal es igual al director de cualquier otra unidad administrativa municipal. No es tan absolutamente claro que la afinidad política **con el alcalde** sea imprescindible para el desempeño adecuado del cargo. La mayoría de este Tribunal no ha podido explicar porqué para ocuparse de las desgracias humanas que ocurren en casos de desastres naturales, sea necesario la lealtad a los postulados ideológicos de algún partido. No ha aludido a

prueba alguna de porqué es ello así. Parece, más bien, que ésta es una situación para aplicar las sabias palabras de este Foro en Colón v. CRUV, 115 D.P.R. 503 (1984):

> "Es indispensable que los tribunales rompan la tendencia y círculo vicioso establecido en el país, después de cada elección general, de sustituir personal gubernamental por motivos ajenos a una buena administración pública: patronazgo, despojo y desquite político-partidista. El drama se repite cada vez que ocurre un cambio de gobierno representativo de otra afiliación política. Las consecuencias detrimentales son funestas y resultan alarmantes. [...] Los tribunales deben realizar todo esfuerzo por diseñar remedios disuasivos."

Es lamentable que la mayoría haya abandonado tantos precedentes que son pertinentes o aplicables al caso de autos. Es lamentable también que no haya usado esta ocasión para sacar a los funcionarios municipales de la defensa civil del pantano del tribalismo partidista. Y, sobre todo, es lamentable que en los días aciagos que nos ha tocado ejercer nuestro ministerio, no haya optado aquí por hacer valer valientemente los mandatos de la Constitución por encima de los atropellos políticos. Por todo ello, disiento.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO
